**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| DONALD ZIMMERMAN, *individually and on behalf of all others similarly situated*, | Case No. _____ |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. |  |
| APEX GLOBAL SOLUTIONS, LLC., |  |
| Defendant. |  |

## CLASS ACTION COMPLAINT FOR DAMAGES

Plaintiff Donald Zimmerman ("Plaintiff"), individually and on behalf of all others similarly situated ("Class Members"), brings this action against Defendant Apex Global Solutions, LLC., ("Defendant") and alleges, upon personal knowledge as to his own actions and his counsel's investigation, and upon information and belief as to all other matters, as follows:

### INTRODUCTION

1.      Defendant provides "seamless, sophisticated, back-office solutions built for your healthcare business."[1] Defendant collects a significant amount of data including personally identifiable information ("PII") including patient names, addresses, dates of birth, Social Security numbers, drivers' license numbers; financial account information; and protected health information ("PHI") including health insurance information, provider name, and other treatment information (collectively, the "Private Information").

---

[1] *See* http://apexglobalus.com/

2.      On April 28, 2025, Defendant announced on their website that an unnamed threat actor gained access to Defendant's information systems through a cybersecurity incident, involving information about its customers, including but not limited to their first and last name together with one or more of the following: address, date of birth, driver's license number, Social Security number, diagnosis/condition, health insurance information, claims information, patient ID, treatment information, provider name and/or financial account information.[2]

3.      On or around July 14, 2024, Defendant discovered suspicious activity on its network systems. Defendant discovered that an unauthorized third-party accessed Defendant's systems between June 18, 2024, and July 2, 2024.[3] This resulted in a double-extortion ransomware attack on its systems in which hackers infiltrated Defendant's information systems, performed reconnaissance operations, identified and stole valuable files containing Class Members' Private Information, and then encrypted Defendant's systems.

4.      Before Defendant discovered the systems interruption, the hackers had already been in Defendant' information systems and downloaded files.

5.      Given that Defendant did not realize that it had been infiltrated until the hackers announced themselves by disrupting Defendant' information systems, it is likely that Defendant failed to implement necessary and expected monitoring, alerting, and data loss prevention tools that would have identified the malicious activity in a timelier manner.

6.      Because of Defendant' failures, Plaintiff and the proposed Class Members have suffered a severe invasion of their privacy and must now face a substantial increase in identity theft and financial fraud for years to come.

---

[2] *See Defendant's Notice of Data Incident*, http://apexglobalus.com/wp-content/uploads/2025/05/2025-AGS-Notice-of-Data-Incident.pdf
[3] *Id*.

## PARTIES

7.      Plaintiff Donald Zimmerman is a resident and citizen of Boynton Beach, Florida.

8.      Defendant is New York limited liability company with its principal place of business located at 400 Rella Boulevard, Suite 200, Montebello, New York 10901.

## JURISDICTION AND VENUE

9.      This court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount of controversy exceeds the sum or value of $5,000,000 exclusive of interests and costs, there are more than 100 putative Class members, and minimal diversity exists because one or more putative Class members are citizens of a different state than Defendant.

10.     This Court has personal jurisdiction over Defendant because they maintain their principal place of business and operations in New York City and because Defendant intentionally availed themselves of this jurisdiction by providing services in New York City.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant' principal place of business is in New York City, because Defendant operate extensively in this District and because a substantial portion of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

**A.  *Defendant Provide IT and Back-Office Solutions for Healthcare Services Involving Highly Sensitive Data.***

12.     Defendant collected the Private Information of Plaintiff and the proposed Class Members, which it held and continues to hold unencrypted in its information systems.

13.     Defendant's mission is  "to help you deliver the best possible care at the lowest

possible cost, so you can scale your business faster and more profitably than ever before." [4]

14.    Upon information and belief, Defendant made promises and representations to Plaintiff and Class Members that his Private Information would be kept safe and confidential, and that the privacy of that information would be maintained.

15.    Plaintiff's and Class Members' Private Information was provided to Defendant's clients with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

16.    Defendant had a duty to adopt reasonable measures to protect the Private Information of Plaintiff and Class Members from involuntary disclosure to third parties. Defendant have a legal duty to keep consumer's Private Information safe and confidential.

17.    Defendant had obligations created by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA"), industry standards, and representations made to Plaintiff and Class Members, to keep his Private Information confidential and to protect it from unauthorized access and disclosure.

18.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

**B.  *The Data Breach***

19.    As previously stated, on or around July 14, 2024, Defendant discovered suspicious unauthorized activity on their systems. [5]

---

[4] *See* http://apexglobalus.com/
[5] *See Defendant's Notice of Data Incident* http://apexglobalus.com/wp-content/uploads/2025/05/2025-AGS-Notice-of-Data-Incident.pdf

20.    On March 17, 2025, Defendant concluded that Plaintiff's and Class Members' private information had been accessed and affected. [6]

21.    Defendant's Notice Letter sent to Plaintiff on June 9, 2025, states, in relevant part:

**What Happened:** AGS discovered potentially suspicious system activity and immediately initiated an investigation, engaging third-party specialists to assist with understanding the nature and scope of the activity. As part of our investigation, we have learned that certain information within our systems may have been accessed or acquired by an unauthorized individual between June 18th 2024 and July 2nd 2024. Upon discovery we work to identify the data at risk and conduct a thorough review to determine whether individual's information may have been at risk and if so identify any such individuals to provide notification. On March 17th 2025 this investigation was completed, and we determined that your information may have been potentially at risk. We then work to confirm contact information to provide notice.

**What Information Was Involved:** The types of information contained within the potentially affected data may have included your first and last name, in combination with one or more of the following data elements: date of birth, Social Security number, health insurance information, claims information, patient ID, treatment information, provider name and/or financial account information.[7]

**Defendant' Data Breach Was Imminently Foreseeable**

22.    Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches targeting institutions that collect and store Private Information, like Defendant, preceding the date of the Data Breach.

23.    Data thieves regularly target institutions like Defendant due to the highly sensitive information in his custody. Defendant knew and understood that unprotected Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize that Private Information through unauthorized access.

24.    In 2021, a record 1,862 data breaches occurred, resulting in approximately

---

[6] *Id.*
[7] *See* Defendant's Notice Letter sent to Plaintiff, attached hereto as ***Exhibit A.***

293,927,708 sensitive records being exposed, a 68% increase from 2020.[8]

25.     As a custodian of Private Information, Defendant knew, or should have known, the importance of safeguarding the Private Information entrusted to it by Plaintiff and Class Members, and of the foreseeable consequences if its data security systems were breached, including the significant costs imposed on Plaintiff and Class Members because of a breach.

26.     Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

27.     Defendant were, or should have been, fully aware of the unique type and the significant volume of data in its systems, amounting to potentially thousands of individuals' detailed Private Information, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

28.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant' failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

29.     The ramifications of Defendant' failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

**Value of Personally Identifiable Information**

30.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[9]

---

[8] *See* Identity Theft Res. Ctr., *2021 Data Breach Annual Report*, at 6 (Jan. 2022), http://notified.idtheftcenter.org/s/.
[9] 17 C.F.R. § 248.201 (2013).

The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[10]

31.     The Private Information of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials.[11]

32.     For example, Private Information can be sold at a price ranging from $40 to $200.[12] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[13]

33.     Based on the foregoing, the information compromised in the Data Breach is even more significant because it includes Social Security numbers and other government identification, which is significantly difficult if not impossible to change.

34.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information . . . [is] worth more than 10x on the black market."[14]

---

[10] *Id.*

[11] Anita George, *Your Personal Data Is for Sale on The Dark Web. Here's How Much It Costs,* DIGITAL TRENDS (Oct. 16, 2019), http://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs.

[12] Brian Stack, *Here's How Much Your Personal Information Is Selling for on the Dark Web,* EXPERIAN (Dec. 6, 2017), http://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web.

[13] *In the Dark,* VPNOVERVIEW, 2019, http://vpnoverview.com/privacy/anonymous-browsing/in-the-dark.

[14] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, (Feb. 6, 2015), http://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

35.     The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[15]

**Defendant Failed to Comply with FTC Guidelines**

36.     The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the FTCA, 15 U.S.C. § 45. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

37.     In October 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal consumer information they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand his network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone

---

[15] *Report to Congressional Requesters*, GAO, at 29 (June 2007), http://www.gao.gov/assets/gao-07-737.pdf.

is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

38.     The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

39.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet his data security obligations.

40.     As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices and failed to audit, monitor, or ensure the integrity of its data security practices, or to appropriately prepare to face a data breach and respond to it in a timely manner. Defendant' failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

41.     Defendant were at all times fully aware of its obligation to protect the Private Information of consumers under the FTC Act yet failed to comply with such obligations. Defendant were also aware of the significant repercussions that would result from their failure to do so. Accordingly, Defendant' conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the

immense damages that would result to Plaintiff and the Class.

**Defendant Failed to Comply with Industry Standards.**

42.     Experts studying cybersecurity routinely identify institutions that store Private Information like Defendant as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

43.     Some industry best practices that should be implemented by institutions dealing with sensitive Private Information, like Defendant, include, but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, implementing reasonable systems to identify malicious activity, implementing reasonable governing policies, and limiting which employees can access sensitive data. As evidenced by the Data Breach and its timeline, Defendant failed to follow some or all these industry best practices.

44.     Other best cybersecurity practices that are standard at large institutions that store Private Information include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points.

45.     Moreover, a properly trained helpdesk that understands how to face social engineering attacks is an expected part of all cybersecurity programs.

46.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06,

DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

47.     Defendant failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

**Common Injuries & Damages**

48.     Because of Defendant' ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of Private Information ending up in the possession of criminals, the risk of identity theft to the Plaintiff and Class Members has materialized and is imminent, and Plaintiff and Class Members have all sustained actual injuries and damages, including: (a) invasion of privacy; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (c) the loss of benefit of the bargain (price premium damages); and (d) the continued risk to his Private Information, which remains in the possession of Defendant, and which is subject to further breaches, so long as Defendant fail to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

**The Data Breach Increases Victims' Risk of Identity Theft.**

49.     Plaintiff and Class Members are at a heightened risk of identity theft for years to come, especially because Defendant' failures resulted in Plaintiff's and Class Members' Social Security number falling into the hands of identity thieves.

50.     The unencrypted Private Information of Class Members has already or will end up for sale on the dark web because that is the *modus operandi* of hackers. Indeed, when these criminals do not post the data to the dark web, it is usually at least sold on private Telegram channels to even further identity thieves who purchase the Private Information for the express

purpose of conducting financial fraud and identity theft operations.

51.    Further, the standard operating procedure for cybercriminals is to use some data, like the Social Security numbers here, to access "fullz packages" of that person to gain access to the full suite of additional Private Information that those cybercriminals have access through other means. Using this technique, identity thieves piece together full pictures of victim's information to perpetrate even more types of attacks.[16]

52.    With "Fullz" packages, cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals.

53.    The development of "Fullz" packages means here that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals may still

---

[16] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See*, *e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), http://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm.

easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

**Loss of Time to Mitigate Risk of Identity Theft and Fraud**

54.    Because of the recognized risk of identity theft, when a data breach occurs, and an individual is notified by a company that his Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm and Defendant arguing that the individual failed to mitigate damages.

55.    The need to spend time mitigating the risk of harm is especially important in cases like this where Plaintiff's and Class Members' Social Security numbers or other government identification are affected.

56.    By spending this time, data breach Plaintiff was not manufacturing his own harm, he was taking necessary steps at Defendant' direction and because the Data Breach included his Social Security number.

57.    Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to remedy the harms they have or may experience because of the Data Breach, such as contacting credit bureaus to place freezes on his accounts; changing passwords and re-securing his own computer networks; and checking his financial accounts and health insurance statements for any indication of fraudulent activity, which may take years to detect.

58.    These efforts are consistent with the U.S. Government Accountability Office that

released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to his good name and credit record."[17]

**The Future Cost of Credit and Identity Theft Monitoring Is Reasonable and Necessary**

59.     Based on the value of the information stolen, the data either has or will be sold to cybercriminals whose mission it is to perpetrate identity theft and fraud. Even if the data is not posted online, these data are ordinarily sold and transferred through private Telegram channels wherein thousands of cybercriminals participate in a market for such data so that they can misuse it and earn money from financial fraud and identity theft of data breach victims.

60.     Such fraud may go undetected for years; consequently, Plaintiff and Class Members are at a present and continuous risk of fraud and identity theft for many years into the future.

61.     The retail cost of credit monitoring and identity theft monitoring can cost $200 or more per year per Class Member. This is a reasonable and necessary cost to monitor and protect Class Members from the risk of identity theft that arose from the Data Breach. This is a future cost for a minimum of seven years that Plaintiff and Class Members would not need to bear but for Defendant' failure to safeguard his Private Information.

**Plaintiff's Experience**

62.     Plaintiff is a current customer of one of Defendant's clients and receives healthcare services.

63.     Thus, at the time of the Data Breach, Defendant retained Plaintiff's Private Information in its system.

---

[17] *See* U.S. Gov't Office, GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), http://www.gao.gov/new.items/d07737.pdf.

64.     Plaintiff's Private Information was compromised in the Data Breach and stolen by identity thieves who illegally accessed Defendant' network for the specific purpose of targeting the Private Information.

65.     Plaintiff has started receiving spam text messages relating to his account.

66.     Plaintiff takes reasonable measures to protect his Private Information.

67.     Plaintiff suffered actual injury in the form of a severe privacy invasion because of his Private Information, including his Social Security number and driver's license, falling into the hands of identity thieves whose mission it is to use that information to perpetrate identity theft and financial fraud.

68.     Plaintiff suffered lost time, interference, and inconvenience because of the Data Breach and has experienced stress and anxiety due to increased concerns for the loss of his privacy and because he knows he must now face a substantial increase in identity theft and financial fraud attempts for years to come.

69.     Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his Private Information, especially his name and Social Security number, being placed in the hands of criminals whose mission it is to misuse that data.

70.     Defendant obtained and continues to maintain Plaintiff's Private Information and has a continuing legal duty and obligation to protect that Private Information from unauthorized access and disclosure. Plaintiff's Private Information was compromised and disclosed because of the Data Breach.

71.     Because of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

72.     Because of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come, in addition to the significantly increased risk of identity theft and financial fraud that Plaintiff must now face because of Defendant' failures.

73.     As a result of the Data Breach, Plaintiff has experienced a significant invasion of his privacy which has him to experience significant anxiety, depression, and fear.

## CLASS ALLEGATIONS

74.     Plaintiff brings this class action on behalf of himself and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

75.     The Class that Plaintiff seeks to represent is defined as follows:

> All persons in the United States or its territories whose Private Information was compromised during the Data Breach (the "Class").

76.     Excluded from the Class is the following individuals and/or entities: Defendant and Defendant' parents, subsidiaries, affiliates, officers and directors, and any entity in which a Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

77.     Plaintiff reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate should discovery reveal that the class should include further categories of individuals.

78.     This action is brought and may be maintained as a class action because there is a

well-defined community of interest among many persons who comprise a readily ascertainable class. A well-defined community of interest exists to warrant class-wide relief because Plaintiff and all members of the Class were subjected to the same wrongful practices by Defendant, entitling them to the same relief.

79.    The Class is so numerous that individual joinder of its members is impracticable.

80.    Common questions of law and fact exist as to members of the Class and predominate over any questions which affect only individual members of the Class. These common questions include, but are not limited to:

a.    Whether and to what extent Defendant had a duty to protect the Private Information of Plaintiff and Class Members;

b.    Whether Defendant had a duty not to disclose the Private Information of Plaintiff and Class Members to unauthorized third parties;

c.    Whether Defendant had a duty not to use the Private Information of Plaintiff and Class Members for non-business purposes;

d.    Whether Defendant failed to adequately safeguard the Private Information of Plaintiff and Class Members;

e.    When Defendant actually learned of the Data Breach;

f.    Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

g.    Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their Private Information had been compromised;

h.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the

information compromised in the Data Breach;

i.      Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.      Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Private Information of Plaintiff and Class Members;

k.      Whether Plaintiff and Class Members are entitled to actual, damages, and/or statutory damages as a result of Defendant 'wrongful conduct;

l.      Whether Plaintiff and Class Members are entitled to restitution because of Defendant' wrongful conduct; and

m.      Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced because of the Data Breach.

81.    Plaintiff is a member of the Class he seeks to represent, and his claims and injuries are typical of the claims and injuries of the other Class Members.

82.    Plaintiff will adequately and fairly protect the interests of other Class Members. Plaintiff has no interests adverse to the interests of absent Class Members. Plaintiff is represented by legal counsel with substantial experience in class action litigation. The interests of Class Members will be fairly and adequately protected by Plaintiff and his counsel.

83.    Defendant have acted or refused to act on grounds that apply generally to the Class Members, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

84.    A class action is superior to other available means for fair and efficient adjudication of the claims of the Class and would be beneficial for the parties and the court. Class action

treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would require. The amounts owed to the many individual Class Members are likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the class to seek and obtain relief. A class action will serve an important public interest by permitting such individuals to effectively pursue recovery of the sums owed to them. Further, class litigation prevents the potential for inconsistent or contradictory judgments raised by individual litigation. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## COUNT I
### Negligence
### *(On Behalf of Plaintiff and the Class)*

85.    Plaintiff and the Class re-allege and incorporate all the above allegations.

86.    Plaintiff and the Class provided and entrusted Defendant's clients with certain Private Information as a condition of receiving services upon the premise and with the understanding that Defendant would safeguard their information, use their Private Information for business purposes only, and/or not disclose their Private Information to unauthorized third parties.

87.    Defendant have full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if the Private Information were wrongfully disclosed.

88.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through

the criminal acts of a third party, which were eminently foreseeable given the ubiquity of data breaches.

89.    Defendant had a duty to exercise reasonable care in overseeing, safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant' security protocols to ensure that the Private Information of Plaintiff and the Class in Defendant' possession was adequately secured and protected.

90.    Defendant owed a duty to Plaintiff and the Class to implement intrusion detection processes that would detect a data breach or unauthorized access to its systems in a timely manner.

91.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove Private Information it was no longer required to retain pursuant to regulations, including that of former employees.

92.    Defendant also had a duty to employ proper procedures to detect and prevent the improper access, misuse, acquisition, and/or dissemination of the Private Information of Plaintiff and the Class.

93.    Defendant' duty to use reasonable security measures arose because of the special relationship that existed between both Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential Private Information, a necessary part of their relationship with Defendant.

94.    Defendant owed a duty to disclose the material fact that Defendant' data security practices were inadequate to safeguard the Private Information of Plaintiff and the Class.

95.    A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly considering Defendant' inadequate security

practices.

96.      Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and the Class, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Defendant' system.

97.      Defendant' own conduct created a foreseeable risk of harm to Plaintiff and the Class. Defendant' misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant' misconduct also included its decisions not to comply with industry standards for the safekeeping of the Private Information of Plaintiff and the Class, including basic encryption techniques freely available to Defendant.

98.      Plaintiff and the Class had no ability to protect their Private Information that was in, and likely remains in, Defendant' possession.

99.      Defendant had and continues to have a duty to adequately disclose that the Private Information of Plaintiff and the Class within Defendant' possession, how it was compromised, and precisely the types of data that was compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

100.      Defendant have admitted that the Private Information of Plaintiff and the Class was wrongfully accessed, acquired, and/or released to unauthorized third persons because of the Data Breach.

101.      Defendant, through their actions and/or omissions, unlawfully breached its duties to Plaintiff and the Class by failing to implement industry protocols and exercise reasonable care

in protecting and safeguarding the Private Information of Plaintiff and the Class during the time the Private Information was within Defendant' possession or control.

102.    Defendant improperly and inadequately safeguarded the Private Information of each Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

103.    Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the Plaintiff and the Class in the face of increased risk of theft.

104.    Defendant, through their actions and/or omissions, unlawfully breached its duty to Plaintiff and the Class by failing to have appropriate procedures in place to detect unauthorized access or intrusions and prevent dissemination of their Private Information. Additionally, Defendant failed to disclose to Plaintiff and the Class that Defendant' security practices were inadequate to safeguard the Private Information of Plaintiff and the Class.

105.    Defendant breached their duty to exercise appropriate clearinghouse practices by failing to remove Private Information it was no longer required to retain pursuant to regulations, including Private Information of former patients.

106.    Defendant, through their actions and/or omissions, unlawfully breached their duty to adequately and timely disclose to Plaintiff and the Class the existence and scope of the Data Breach.

107.    But for Defendant' wrongful and negligent breach of duties owed to Plaintiff and the Class, the Private Information of Plaintiff and the Class would not have been compromised.

108.    There is a close causal connection between Defendant' failure to implement security measures to protect the Private Information of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by each Plaintiff and the Class. The Private Information of Plaintiff

and the Class was accessed as the proximate result of Defendant' failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures and oversight.

109.    As a direct and proximate result of Defendant' negligence, Plaintiff and the Class have suffered and will continue to suffer injury.

110.    Additionally, as a direct and proximate result of Defendant' negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information which remains in Defendant' possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

111.    As a direct and proximate result of Defendant' negligence, Plaintiff and the Class are entitled to and demand actual, consequential, and nominal damages.

## COUNT II
### Negligence *Per Se*
### *(On Behalf of Plaintiff and the Class)*

112.    Plaintiff and the Class re-allege and incorporate all the above allegations.

113.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant' duty in this regard.

114.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendant' conduct was particularly unreasonable given the nature and amount of

Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

115.    Defendant violation of Section 5 of the FTC Act constitutes negligence *per se*.

116.    Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

117.    The harm that occurred because of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

118.    As a direct and proximate result of Defendant' negligence *per se*, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their Private Information is used; iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remain in Defendant' possession and are subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect the Private Information of Plaintiff and the Class; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Personal Information compromised as a result

of the Data Breach for the remainder of the lives of Plaintiff and the Class.

## COUNT III
### Breach of Third-Party Beneficiary Contract
#### *(On Behalf of Plaintiff and the Class)*

119.    Plaintiff and the Class re-allege and incorporate all the above allegations.

120.    Defendant required Plaintiff and the Class to provide and entrust their Private Information as a condition of receiving services.

121.    Plaintiff and the Class paid money to Defendant's clients in exchange for services, as well as Defendant' promises to protect their Private Information from unauthorized disclosure.

122.    Defendant implicitly promised to implement reasonable, industry standard cybersecurity measures and to make sure that Plaintiff and Class Members' Private Information would remain reasonably protected.

123.    As a condition of receiving services from Defendant, Plaintiff and the Class provided and entrusted their Private Information. In so doing, Plaintiff the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

124.    A meeting of the minds occurred, as Plaintiff and Class Members agreed, *inter alia*, to provide accurate and complete Private Information and to pay Defendant in exchange for Defendant' collective agreement to, *inter alia*, protect their Private Information.

125.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant's clients in the absence of Defendant' implied promise to adequately safeguard this confidential personal and medical information.

126.    Plaintiff and the Class fully performed their obligations under the implied contracts

with Defendant.

127.    Defendant have breached the implied contracts it made with Plaintiff and the Class by making their Private Information accessible from the internet (regardless of any mistaken belief that the information was protected) and failing to make reasonable efforts to use the latest security technologies designed to help ensure that the Private Information was secure, failing to encrypt Plaintiff and Class Members' Private Information, failing to safeguard and protect their Private Information, and by failing to provide timely and accurate notice to them that Private Information was compromised as a result of the data breach.

128.    Defendant' failure to meet their promises constitute breach of the implied contracts.

129.    Because Defendant allowed unauthorized access to Plaintiff and Class Members' Private Information and failed to safeguard the Private Information, Defendant breached their contracts with Plaintiff and Class Members.

130.    Defendant breached their contracts by not meeting the minimum level of protection of Plaintiff and Class Members' protected health information and other Private Information, because Defendant did not prevent against the Data Breach.

131.    As a direct and proximate result of Defendant' above-described breach of implied contract, Plaintiff and the Class are now subject to the present and continuing risk of fraud, and are suffering (and will continue to suffer) the ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud

alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

132.    As a result of Defendant' breach of implied contract, Plaintiff and the Class are entitled to and demand actual, consequential, and nominal damages.

**COUNT IV**
**Unjust Enrichment**
*(On Behalf of Plaintiff and the Class)*

133.    Plaintiff and the Class re-allege and incorporate all the above allegations.

134.    This Count is pled in the alternative to Count III, Breach of Implied Contract.

135.    Plaintiff and the Class conferred a benefit upon Defendant in providing Private Information to Defendant.

136.    Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiff and the Class. Defendant also benefited from the receipt of Plaintiff's and the Class's Private Information, as this was used to facilitate its services to Plaintiff and the Class.

137.    Defendant enriched themselves by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information.

138.    Instead of providing a reasonable level of security, or retention policies, which would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and the Class by utilizing cheaper, ineffective security measures. Plaintiff and the Class, on the other hand, suffered as a direct and proximate result of Defendant' failure to provide the requisite security.

139.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the Class's Private Information because Defendant failed to adequately protect it.

140.    Plaintiff and the Class have no adequate remedy at law.

141.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by them because of their misconduct and Data Breach.

## COUNT V
### Violation of New York General Business Law § 349
### *(On Behalf of Plaintiff and the Class)*

142.    Plaintiff and the Class re-allege and incorporate all the above allegations.

143.    The New York General Business Law ("GBL") § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of New York.

144.    By reason of the conduct alleged herein, Defendant has engaged in unlawful practices within the meaning of GBL § 349. The conduct alleged herein is a "business practice" within the meaning of GBL § 349, and the deception occurred within New York State.

145.    Defendant stored Plaintiff's and Class Members' Private Information on the aforementioned information systems. Defendant knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied "with federal regulations" and that would have kept Plaintiff's and Class Members' Private Information secure and prevented the loss or misuse of Plaintiff's and Class Members' Private Information. Further, Defendant knew or should have known that they each did not employ reasonable safeguards and oversight to ensure that Plaintiff's and Class Members' Private Information was protected.

146.    Plaintiff and Class Members never would have provided their Private Information to Defendant's clients if they had been told or knew that Defendant would fail to maintain sufficient security to keep such Private Information from being taken by others.

147.    Defendant violated GBL § 349 by misrepresenting, both by affirmative conduct and by omission, the safety of Defendant' storage and services, specifically the security thereof, and its ability to safely store and dispose of Plaintiff's and Class Members' Private Information.

148.    Defendant also violated GBL § 349 by failing to implement reasonable and appropriate security measures or follow industry standards for data security, and by failing to immediately notify Plaintiff and Class Members of the Data Breach. If Defendant had complied with these legal requirements, Plaintiff and Class Members would not have suffered the damages related to the Data Breach.

149.    Defendant' practices, acts, policies, and course of conduct violate GBL § 349 in that:

    a.    Defendant actively and knowingly misrepresented or omitted disclosure of material information to Plaintiff and Class Members at the time it provided such Private Information that Defendant did not have sufficient security or mechanisms to protect Private Information; and

    b.    Defendant failed to give timely warnings and notices regarding the defects and problems with the security of its computer systems to protect Plaintiff's and Class Members' Private Information. Defendant possessed actual knowledge of the inherent risks in inadequate data security.

150.    Plaintiff and the Class were entitled to believe, and did believe, that Defendant would take appropriate measures to keep their Private Information safe. Defendant did not disclose that Plaintiff's and Class Members' Private Information was vulnerable to malicious actors, and Defendant were the only one in possession of that material information, which it had a duty to disclose.

151.    The aforementioned conduct constitutes an unconscionable commercial practice in that Defendant have, by the use of false or deceptive statements and/or knowing intentional material omissions, misrepresented and/or concealed the inadequate nature of its security practices, resulting in the Data Breach.

152.    Members of the public were deceived by Defendant' misrepresentations and failures to disclose.

153.    Such acts by Defendant are and were deceptive acts or practices which are and/or were likely to mislead a reasonable consumer providing his Private Information to Defendant's clients. Said deceptive acts and practices are material. The requests for and use of such Private Information in New York through deceptive means occurring in New York were consumer-oriented acts and thereby falls under the New York consumer protection statute, GBL § 349.

154.    Defendant' wrongful conduct caused Plaintiff and Class Members to suffer a consumer-related injury by causing them to incur substantial expense to protect from misuse of the Private Information by third parties and placing Plaintiff and Class Members at serious risk for monetary damages.

155.    As a direct and proximate result of Defendant' violations of the above, Plaintiff and Class Members suffered damages including, but not limited to: unauthorized use of their Private Information; theft of their personal and financial information; costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts; damages arising from the inability to use their Private Information; costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address an attempt to ameliorate, mitigate and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, purchasing credit monitoring and identity theft protection services, initiating

and monitoring credit freezes, and the stress, nuisance, and annoyance of dealing with all issues resulting from the Data Breach; the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Private Information being placed in the hands of criminals; damages to and diminution in value of their Private Information entrusted to Defendant's clients; and the loss of Plaintiff's and Class Members' privacy.

156.    In addition to or in lieu of actual damages, because of the injury, Plaintiff and the Class seek statutory damages for each injury and violation which has occurred.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and Class Members, requests judgment against Defendant and that the Court grant the following:

A.    For an Order certifying the Class, and appointing Plaintiff and his Counsel to represent the Class;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the Private Information of Plaintiff and Class Members, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

C.    For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii.    prohibiting Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen Private Information

iii.       requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

iv.       requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

v.       requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiff and Class Members;

vi.       requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant' systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.       requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.       requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix.       requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant' network is

compromised, hackers cannot gain access to other portions of Defendant'
system;

x.      requiring Defendant to conduct regular database scanning and securing
checks;

xi.     requiring Defendant to establish an information security training program
that includes at least annual information security training for all employees,
with additional training to be provided as appropriate based upon the
employees' respective responsibilities with handling personal identifying
information, as well as protecting the personal identifying information of
Plaintiff and Class Members;

xii.    requiring Defendant to routinely and continually conduct internal training
and education, and on an annual basis to inform internal security personnel
how to identify and contain a breach when it occurs and what to do in
response to a breach;

xiii.   requiring Defendant to implement a system of tests to assess its respective
employees' knowledge of the education programs discussed in the
preceding subparagraphs, as well as randomly and periodically testing
employees' compliance with Defendant' policies, programs, and systems
for protecting personal identifying information;

xiv.    requiring Defendant to implement, maintain, regularly review, and revise as
necessary a threat management program designed to appropriately monitor
Defendant' information networks for threats, both internal and external, and
assess whether monitoring tools are appropriately configured, tested, and

updated;

xv.      requiring Defendant to meaningfully educate all Class Members about the threats that they face because of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi.      requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant' servers; and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant' compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.      For an award of damages, including actual, consequential, nominal, and statutory damages, as allowed by law in an amount to be determined;

E.      For an award of restitution and damages in an amount to be determined;

F.      For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

G.      For prejudgment interest on all amounts awarded; and

H.      Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that this matter be tried before a jury.

Date: June 13, 2025                Respectfully submitted,

*/s/ Steven P. Sukert*
Steven P. Sukert, NY Bar No. 5690532
Jeff Ostrow (pro hac vice forthcoming)
**KOPELOWITZ OSTROW, P.A.**

34

1 West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Tel.: (954) 332-4200
sukert@kolawyers.com
ostrow@kolawyers.com

*Counsel for Plaintiff and the Putative Class*